## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BENNY PADILLA III,
dba SILVER STALLION SALOON,
            Plaintiff,

vs.                                                              No. CIV 05-00505 MV/KBM

THE CITY OF GALLUP; ROBERT
ROSEBROUGH; ERIC HONEYFIELD;
SYLVESTER STANLEY; AND
UNKNOWN PERSONS 1 THROUGH 100,

            Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment,

filed January 9, 2006, **[Doc. No. 27]**.  The Court, having considered the motion, briefs, relevant

law and being otherwise fully informed, finds that the motion is well-taken and will be

**GRANTED**.

## BACKGROUND

Plaintiff, a Native American, is the owner and operator of the Silver Stallion Saloon in

Gallup, New Mexico.  In addition to serving alcoholic beverages, the Silver Stallion Saloon also

sells package liquor.  Approximately 50% of the employees and 95% of the customers at the

Silver Stallion Saloon are Native American.

Both state and Gallup law enforcement officers conduct liquor control enforcement

activities in Gallup.  These activities include visiting liquor establishments to observe whether

alcohol is being sold to intoxicated persons or minors, as well as ensuring that liquor licenses and

server permits are on display.  At times, undercover stings are performed in which underage officers enter an establishment and attempt to purchase alcohol.

In 2003, Defendant Robert Rosebrough was elected mayor of Gallup on a platform that included more active enforcement of existing liquor laws and city ordinances.  Shortly after Rosebrough's election, the City Manager sent a letter of expectations to the Gallup Police Department ("Department") requesting that the Department increase its liquor enforcement activities.  Following receipt of this letter, the Department formulated a plan for liquor law enforcement that involved dividing the city up into geographic zones and assigning officers to visit all liquor licensees in a particular geographic zone.  The Department used this system for approximately six months to a year, and then switched to other methods for liquor enforcement. The record does not reflect what other enforcement methods were used after the geographic system, only that the other methods, according to Defendants, resulted in enforcement that was essentially "random."[1]

From September 2001 to June 2005, Silver Stallion Saloon employees received at least twenty citations for violations of  liquor laws and ordinances.  Fifteen of these violations were dismissed and five were upheld.  Of the fifteen citations that were dismissed, seven were dismissed for failure to prosecute and one was dismissed by the prosecutor because the issuing officer was unavailable.  The reasons the other seven citations were dismissed are not clear from the records submitted but it does not appear that any of the citations were dismissed on the merits.

---

[1]  After this case was filed, the Department began utilizing a system whereby each liquor establishment is assigned a permanent number.  Every time the Department engages in liquor enforcement activities, it generates a  random list of numbers that governs the order in which it visits liquor establishments.

Plaintiff believes that the activities of the Gallup police officers at the Silver Stallion Saloon were performed at the request of the Defendant Rosebrough and the City Council "to put him out of business, because his business is owned by a Native American, employs Native Americans and caters to Native American customers."   Plaintiff contends that this alleged selective enforcement of the liquor laws at the Silver Stallion Saloon resulted in several of his employees quitting their jobs and deterred customers from frequenting the Silver Stallion Saloon.

Plaintiff has submitted affidavits from several of his employees describing liquor law enforcement activities at the Silver Stallion Saloon.[2]  According to these affidavits, law enforcement officers entered the Silver Stallion Saloon both undercover and in uniform to observe if Silver Stallion Saloon employees were complying with liquor control laws; confronted customers, both in the bar and in the parking lot, to determine if they were intoxicated; conducted sting operations in which undercover agents who were minors entered the Silver Stallion and attempted to purchase alcohol; drove through the parking lot; and parked a marked police cruiser in the parking lot, or near the parking lot, to observe customers.[3]

---

[2]  Defendants challenge the admissibility of the affidavits on the grounds that they contain inadmissible opinion and speculation.  The Court can consider only admissible evidence in ruling on a summary judgment motion.  Federal Rule of Civil Procedure 56(e) mandates that evidence offered in opposition to a motion for summary judgment be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).  The Court will only consider the admissible portions of these affidavits.   The unsubstantiated opinions contained in the submitted affidavits will not be considered by the Court.

[3]  Many of the employees describe enforcement activities performed by state police officers, who are not defendants in this suit, and other employees do not distinguish between state and local law enforcement officers.  *See* Sandy Perales Affidavit (relating incident involving state police).

Plaintiff filed a complaint alleging violations of 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985 and the New Mexico Tort Claims Act.  Defendant filed the instant motion for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  There is no requirement that the moving party negate the nonmovant's claim.  *See Celotex Corp. v. Catrett*,  477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than " merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file,

designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.   Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

### I.  Rule 56(f)

In his response, Plaintiff requests that the Court, pursuant to Rule 56(f), suspend any consideration of Defendants' summary judgment motion until discovery is complete and Plaintiff has the opportunity to supplement his response.  Rule 56(f), however, "may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986).  Instead, the nonmovant must provide an affidavit explaining why facts precluding summary judgment cannot be presented.  *Id.* at 832; 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2740 at 530 (1983).  This includes identifying the probable facts not available and what steps have been taken to obtain these facts. *See* 6 Moore's Federal Practice ¶ 56.24.  In this circuit, the nonmovant also must explain "how additional time will enable him to rebut the movant's allegations." *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 537 (10th Cir. 1987).

Plaintiff's counsel's unverified assertions in a memorandum opposing summary judgment are insufficient to invoke the protections of Rule 56(f) and Plaintiff's request that the Court defer

ruling on Defendants' motion for summary judgment must be denied.  *See Committee for First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir. 1992) ("counsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver").

## II.      Judicial Notice of Newspaper Articles, Editorials, and Letters

Plaintiff asks the Court to take judicial notice of certain newspaper articles and editorials published in the Gallup Independent discussing whether city officials selectively target certain establishments for enforcement of the liquor laws and whether city officials and law enforcement officers discriminate against Native Americans.  Pursuant to Federal Rule of Evidence 201(b), a court may take judicial notice of a fact where the fact is not subject to reasonable dispute because it is either 1) generally known within the territorial jurisdiction of the trial court, or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

A number of cases have addressed the propriety of taking judicial notice of newspaper articles.  A court may take judicial notice of newspaper articles that demonstrate that certain facts were generally known within the court's jurisdiction.  *See, e.g., Washington Post v. Robinson*, 935 F.2d 282, 291-292 (D.C. Cir. 1991) (newspaper articles that revealed involvement of informant in criminal investigation considered in action by newspaper to compel unsealing of plea agreement).  A court may also take judicial notice of facts reported in newspaper articles where those facts were generally known within the local jurisdiction or were capable of a sufficiently accurate and ready determination. *See, e.g., Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458- 59 (9th Cir. 1995) (report of layoffs concerned matter generally known in Southern California and

subject to accurate and ready determination); *Peters v. Delaware River Port Authority of PA and NJ*, 16 F.3d 1346, 1356, n. 12 (3d Cir. 1994) (notice of newspaper accounts reflecting existence of competition between state authorities).  Judicial notice of newspaper articles is not appropriate, however, when the reported facts are not capable of easy verification.  *Cofield v. Alabama Public Service Com'n,* 936 F.2d 512, 517 (11th Cir. 1991) (report in newspaper article that prison inmate had access to large sums of hidden money not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

Plaintiff requests that the Court take judicial notice of the following articles:

1.)  A May 5, 2005 article in which Owen Pena, a Gallup police officer, is quoted as saying that city officials told him to "keep an eye" on three bars, one of which was the Silver Stallion Saloon, and that he understood this order to mean that he was to visit those bars more than others.

2.)  A May 11, 2005 newspaper article stating that Mayor Rosebrough had threatened to sue Officer Pena unless he retracted his May 5, 2005 statement.

3.)  Two "Independent Opinion" columns in which the publisher of the newspaper opines that Mayor Rosebrough is targeting bars that cater to Native American clientele for closure and that "Rosebrough and his top administrator are deeply prejudiced against Native Americans."

4.)  An April 15, 2005 article stating that Mayor Rosebrough "said he still hopes to be able to convince [the owner of another local bar] to change his approach and make it a downtown sandwich bar that will also attract non-Indians, much like a Bennigan's or a Chili's."

5.)  A May 11, 2005 letter to the editor in which a reader opines that Gallup law enforcement discriminates against Native Americans.

Judicial notice of the newspaper articles, letters, and columns submitted by Plaintiff is inappropriate because either 1) they reflect only the writer's opinion, which is merely speculation and cannot be a "fact" commonly known throughout the court's territory or capable of sufficient accurate and ready determination by other credible sources, or 2) the statements contained therein are not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.   Consequently, the articles are inadmissible and cannot be considered in opposition to Defendants' motion for summary judgment.

## III.    Plaintiff's Claims

### A.  42 U.S.C. § 1981

Plaintiff asserts that Defendants' conduct denied Plaintiff his right to enter into legal contracts regarding the sale and purchase of alcoholic beverages in violation of 42 U.S.C. § 1981.

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

To state a claim under § 1981, a plaintiff must prove a deprivation of one of the enumerated rights that under similar circumstances would have been accorded to a person of a different race and also that such deprivation was intentional and motivated by racial prejudice. *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (§ 1981 "can be violated only by purposeful discrimination").

The burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for Title VII discrimination cases, is also applied to cases proceeding under § 1981.  *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1509 (10th Cir. 1997) (*McDonnell Douglas* analytical framework applies to claims under § 1981).

Extrapolating the pertinent elements of the *McDonnell Douglas* analysis to a § 1981 contract claim, plaintiff must demonstrate the following elements to establish a *prima facie* case of race discrimination: (1) that he is a member of a protected class; (2) that the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute, *i.e.*, the making, performance, modification, or termination of contracts, or the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship; and (3) that the defendant treated the plaintiff less favorably with regard to the allegedly discriminatory act than the defendant treated other similarly situated persons who were outside plaintiff's protected class.  *Benton v. Cousins Properties, In*c., 230 F.Supp.2d 1351, 1370 (N.D. Ga. 2002), *aff'd* 97 Fed.Appx. 904 (11th Cir. 2004).

Plaintiff's claim falters on the third prong of the *McDonnell Douglas* analysis because Plaintiff has come forward with no admissible evidence that the enforcement of the liquor laws at Plaintiff's establishment differed from the enforcement of the liquor laws at establishments owned or frequented by persons of a different race.  Plaintiff has presented evidence of how the liquor laws were enforced at his bar but no evidence that this enforcement was different than the enforcement at other bars owned and frequented by persons of a different race.

Some Silver Stallion Saloon employees submitted affidavits stating that they do not believe that other establishments were visited as often as the Silver Stallion Saloon but provide no

support for this opinion.  *See, e.g.,* Shandell Stevens Affidavit ("Also, none of the other people whom I've read about getting citations were not Native Americans, and they weren't visited, in my opinion, as much as us at Silver Stallion.").  Defendant, on the other hand, has presented numerous affidavits from Gallup police officers stating that the law enforcement activity at the Silver Stallion Saloon was similar to the law enforcement activity conducted at other liquor establishments in Gallup.  Absent any evidence that comparable persons of a different race were not subjected to the same enforcement, Plaintiff's § 1981 claim fails.

### B.  42 U.S.C. §§ 1982 and 1985

In Count II, Plaintiff claims that Defendants are "attempting to force Plaintiff to lose his liquor license, his saloon, and his package liquor store so that the license can be transferred to a business that will attract 'non-Natives'" in violation of 42 U.S.C. § 1982.  Section 1982 guarantees all citizens of the United States "the same right ... as is enjoyed by white citizens ... to inherit, purchase, lease, sell, hold, and convey real and personal property."  The section forbids both official and private racially discriminatory interference with property rights.  *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (holding that §1982 bars all racial discrimination, private as well as public, in the sale or rental of property).

A finding of intentional racial discrimination is necessary for recovery against a defendant under § 1982.  *Save our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc.*, 568 F.2d 1074, 1078 (5th Cir. 1978).  Plaintiff has submitted affidavits from his employees stating that they felt law enforcement discriminated against Native Americans but the affidavits contain no specific statements to substantiate these assertions.  For example, one employee, Amanda Palacios, states that she has  "seen a lot of racial attacks on the Native customers from the Gallup police."

Amanda Palacios Affidavit.  The examples she gives, however, show nothing more than law enforcement officers enforcing the liquor laws at the Silver Stallion Saloon.  She provides no evidence of any racial animus toward Native Americans.  Similarly, another employee states that she felt police officers asking Native American customers of the Silver Stallion for identification was racially discriminatory.  Lucinda Charlie Affidavit ("I witnessed where these people drove up to the place, the police department came and asked these folks for their IDs, before they stepped out of their vehicle.  Being Native American, I felt this was discrimination against Native American and the place, Silver Stallion.").  Notably, however, she does not allege that Native American customers were treated differently than customers of other races.

Several of the Silver Stallion employees opined that the law enforcement activities at the Silver Stallion were racially discriminatory because primarily Native Americans were being observed or confronted by law enforcement officers.  *See, e.g.,* Amanda J. Palacios Affidavit ("the police would sit outside the bar and would stop the customers that would purchase beer from package and see if they were or have been drinking and most of the time the customers were Native Americans they would stop and harass.").  Due to the racial composition of the Silver Stallion's customers, however, it was inevitable that most of the customers confronted by the law enforcement officers at the Silver Stallion were Native American.  None of the affidavits submitted by Silver Stallion employees states that an employee heard any racial comments by law enforcement officers or that law enforcement officers treated non-Native American customers at the Silver Stallion differently than Native American customers at the Silver Stallion.

Plaintiff also submits two affidavits from his father, Benny Padilla, Jr.  Even assuming these affidavits are admissible, they do not establish any racial animus.  The first affidavit states

that Rick White, a Gallup police officer conducting liquor enforcement activities at the Silver Stallion Saloon, told Padilla, Jr. that "he din't [sic] like being here, but he had too [sic] because he was ordered by the City Council."  *See* Benny Padilla, Jr. Affidavit I.  It is unclear from the statement if Mr. White meant that he had been ordered by the City Council to conduct liquor law enforcement activities in general or if he had been ordered by the City Council to conduct liquor law enforcement activities at the Silver Stallion Saloon.  Even assuming the latter, this statement does not demonstrate that such an order was motivated by any racial animus.

The second affidavit states, in part, that Nelbert Lee, who is presumably a Gallup police officer, told Padilla, Jr. that he was working with Gallup police officer Lazos to close down the Silver Stallion Saloon.  *See* Benny Padilla, Jr. Affidavit II.  Again, this statement, which contains no explanation regarding the alleged attempt to shut down the Silver Stallion Saloon, provides no evidence of racial animus.

Finally, Plaintiff submits affidavits from a former owner and a former employee of another local bar whose clientele was primarily Native American stating that enforcement of the liquor laws at their establishment ultimately resulted in the sale of that bar.  *See* Alfred Bousquet Affidavit and Randy Johnson Affidavit.  Neither affidavit, however, contains any evidence that the enforcement of the liquor laws at this other bar differed from the enforcement of the liquor laws at bars owned and frequented by persons of another race.

In short, none of the admissible evidence provided by Plaintiff provides evidence of intentional racial discrimination.  Although not determinative, Plaintiff concedes that he has never heard any member of the Gallup Police Department or any city official say anything derogatory toward Native Americans; that he has never been told or heard that any member of the Gallup

Police Department or city official asked that his bar be targeted for law enforcement activity because of the race of his customers; and that he has never heard any city employee say that law enforcement activities at the Silver Stallion were motivated by a desire to have Plaintiff's liquor license transferred to a "whiter" establishment.  Padilla Deposition, pp. 64, 85, 87, & 89.

Plaintiff has failed to come forward with any admissible evidence of intentional racial discrimination and, as a result, his § 1982 claim must fail.  Absent any evidence that Defendants' actions were racially motivated, Plaintiff's § 1985 claim also fails.  *See Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990) (claims under 42 U.S.C. § 1985 require a showing of "class-based, discriminatory animus").

**C.  42 U.S.C. § 1983**

In his complaint, Plaintiff makes three claims under Section 1983--an Equal Protection Claim, an unreasonable search and seizure claim, and a substantive due process claim.  Plaintiff's entire argument in support of  his three § 1983 claims in his opposition to summary judgment consists of one conclusory sentence stating that he has presented sufficient evidence to establish that Defendants, acting under color of state law, deprived Plaintiff of a constitutional right.  Plaintiff's failure to present any argument in support of his § 1983 claims could be considered an abandonment of these claims.  *See, e.g., United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994) (court is not required to fashion plaintiff's arguments for her where her allegations are merely conclusory in nature and without supporting factual averments).  However, to the extent the Court can discern the basis for Plaintiff's claims, the Court will attempt to address them on the merits.

First, Plaintiff claims that Defendants violated the Equal Protection Clause by singling out the Silver Stallion Saloon for harsher treatment based upon the race of Plaintiff, his employees and his customers.  As discussed above, Plaintiff has not come forward with any admissible evidence that the liquor laws were enforced any differently at his saloon than at other establishments.  Thus, Plaintiff's Equal Protection Clause claim fails.

Second, Plaintiff claims that Defendants violated his Fourth Amendment rights by subjecting Plaintiff and his business premises to unreasonable searches and seizures.  Plaintiff has presented evidence that Gallup police officers, as well as other law enforcement officers, performed law enforcement activities at his bar and that several citations for violations of the liquor laws were issued.  It is unclear which of these activities Plaintiff contends constitutes an unreasonable search or seizure.

It appears that Plaintiff may be contending that the issuance of unwarranted citations for violations of liquor laws constitutes an unreasonable seizure.  Even assuming the issuance of an unwarranted citation could constitute an unreasonable seizure for purposes of the Fourth Amendment, there is no evidence in the record that the citations issued to Plaintiff's employees were improper or unsubstantiated.  The records submitted indicate that seven of the citations were dismissed for failure to prosecute and one citation was dismissed by the prosecutor because the issuing officer was unavailable.  The reasons the other citations were dismissed are not clear from the records submitted but it does not appear that any of the citations were dismissed on the merits.  Consequently, the fact that many of the citations were dismissed does not suggest that the citations were improperly issued.

-14-

Based on the record before it, the Court cannot discern the basis for Plaintiff's Fourth Amendment claim, much less any evidence in support of such a claim, and summary judgment will be granted in favor of Defendants on this claim.

Third, Plaintiff claims that Defendants violated his right to substantive due process by using egregious and outrageous behavior to deprive him of his ability to put his property to productive use.  "Any substantive due process claim must represent more than an ordinary tort to be actionable under § 1983, and must shock the conscience."  *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999) (quotations and citations omitted).

Plaintiff has failed to show that Defendants' behavior was egregious or outrageous. Plaintiff's evidence establishes that Gallup police officers performed law enforcement activities at his bar and that several citations for violations of liquor laws were issued.  Some of the citations were later dismissed for reasons apparently unrelated to the merits of the citations.  Significantly, Plaintiff has not shown that the liquor laws were enforced differently at his bar than at other bars in Gallup or that any of the law enforcement activities were motivated by a racial animus.  Based on this record, a reasonable factfinder could not find that Defendants' actions rise to the "shocks the conscience" level necessary to state a claim under substantive due process and summary judgment will be granted to Defendants on this claim.

### D.  New Mexico Tort Claims Act

Plaintiff also seeks monetary damages under the New Mexico Tort Claims Act for his business losses resulting from "malicious prosecution, abuse of process, libel, slander, defamation of character, violation of his property rights, and deprivation of his rights, privileges and immunities as secured by the constitution and laws of the United States and New Mexico."  The

New Mexico Tort Claims Act provides the exclusive remedy for a tort action brought against a governmental entity or a public employee. *See* N.M. Stat. Ann. § 41-4-17 (the "Tort Claims Act . . . shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived"); *see id.* § 41-4-2 ("it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act . . . and in accordance with the principles established in that act"). All the named defendants are either governmental entities or public employees within the meaning of the Act. *See id.* §§ 41-4-3(B) & (F). Therefore, Defendants are immune from any tort claims unless that immunity has been waived by the Tort Claims Act.

Immunity under New Mexico Tort Claims Act is waived only for those torts specifically enumerated within the Act or for deprivation of any rights, privileges, or immunities secured by Federal and State Constitutions and laws. The only possible waiver of immunity for the actions alleged by Plaintiff is contained in § 41-4-12, which waives immunity for certain specified torts and for violations of constitutional rights when caused by law enforcement officers:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Of the named defendants, only Defendant Stanley is a law enforcement officer for purposes of the Act. *See, e.g., Montes v. Gallegos*, 812 F.Supp. 1165, 1172 (D.N.M. 1992) (mayor is not a "law enforcement officer" for purposes of the New Mexico Tort Claims Act). Thus, Plaintiff's claims under the Tort Claims Act may only be brought against Defendant Stanley.

-16-

While Plaintiff's complaint broadly alleges property damage, in the form of business losses, from both specific torts and violations of constitutional rights,[4] Plaintiff limits his claim in his response to a violation of his constitutional rights.[5]  As discussed above, Plaintiff has not established the deprivation of any right, privilege or immunity under the constitutions of the United States and the State of New Mexico, much less a deprivation committed by Defendant Stanley.  Consequently, Plaintiff's claim under the Tort Claims Act fails.

## <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, filed January 9, 2006, **[Doc. No. 27]**, is **GRANTED**.  Judgment will be entered in favor of

---

[4] "Pursuant to NMSA, 1978, 41-4-4, Plaintiff brings an action against Defendants for monetary damages resulting from property damage resulting from malicious prosecution, abuse of process, libel, slander, defamation of character, violation of his property rights, and deprivation of his rights, privileges and immunities as secured by the constitution and laws of the United States and New Mexico."  Complaint at ¶ 53.

[5] "With regard to Plaintiff's claims under the State Tort Claims Act, Plaintiff has sufficiently alleged and provided evidence [sic] deprivation of his rights, privileges and immunities under the constitutions of the United States and the State of New Mexico."  Response at p. 17.

Defendants on all claims.

Dated this 28th day of June, 2006.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
     William G. Stripp, Esq.

Attorney for Defendants:
     James P. Lyle, Esq.